IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 13, 2004 Session

## STATE OF TENNESSEE v. DARRELL SANDERLIN

**Direct Appeal from the Circuit Court for Haywood County**
**No. 4900B     Clayburn L. Peeples, Judge**

_____

**No. W2003-01546-CCA-R3-CD  - Filed May 27, 2004**

_____

The Appellant, Darrell Sanderlin, appeals from the sentencing decision of the Haywood  County Circuit Court.  Sanderlin pled guilty to one count of child abuse of his six-year-old son, a class D felony.  Pursuant to a negotiated plea agreement, he was sentenced as a Range I, standard offender, with the length and manner of service to be determined by the trial court.  Following a sentencing hearing, the trial court imposed a sentence of four years incarceration.  On appeal, Sanderlin argues that the trial court erred by ordering a sentence of total confinement rather than a less restrictive alternative.  After review, the sentencing decision is affirmed.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, J.J., joined.

David M. Livingston, Brownsville, Tennessee, (on appeal); and David Camp, Jackson, Tennessee, (at trial), for the Appellant, Darrell Sanderlin.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; J. Ross Dyer, Assistant Attorney General; Garry Brown, District Attorney General; and Larry Hardister and Elaine Todd, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background**

On February 26, 2003, the Appellant, a Range I, standard offender, pled guilty to one count of child abuse, with the length and manner of service to be determined by the trial court.

The pre-sentence report contains the following information which was prepared by Deputy Kim Williams with the Haywood County Sheriff's Department:

On September 26, 2001, I received information from Lt. Kelvin Evans that he had received a phone call from the grandmother of [the victim], stating that [the victim's] father, Darrell Sanderlin, had physically abused him. Upon speaking with the grandmother, Investigator Melvin Bonds, and myself went to the residence of Mr. Sanderlin's mother who lives on Dupree Street in Brownsville, Tennessee. Mr. Darrell Sanderlin met us at the back door, and after advising him we needed to see [the victim] he told us that [the victim] was in Stanton. Mr. Sanderlin advised us he would meet us at the sheriff's department in approximately 15 to 20 minutes with [the victim]. Mr. Sanderlin met us within about 10 minutes. . . . We then proceeded in telling Mr. Sanderlin that we needed to speak to [the victim] alone. Myself, Investigator Bonds and Renae Pullen (DCS) interviewed [the victim]. [The victim] was very nervous and would not speak against either his mother or father. When we asked to see [the victim's] back he advised us that his dad had told him not to let us look at him without his presence. At this time we did pull [the victim's] shirt up and observed numerous injuries, which covered his back, legs and arms. Some of these injuries were scabbed over, and some were whelps. At this time I spoke with Mr. Darrell Sanderlin, who advised me that he had disciplined his son as he had been disciplined as a child, and he did not think that this was wrong. Mr. Sanderlin did not show any remorse at all for the injuries that he had inflicted on his son. Mr. Sanderlin did not wish to make any further statements and was charged with aggravated child abuse and transported to the Haywood County Jail.

Later this same date Mrs. Pullen and myself spoke with [the victim's] mother Angela Sanderlin. Mrs. Sanderlin stated to us that her husband had whipped [the victim] with switches. She also advised he had whipped him before, and that she had asked him not to, but he had done so anyway.

At the sentencing hearing, Renae Pullen, a case manager with the Department of Children's Services, testified that the victim told her that he received a spanking because he had gotten in trouble at school. Mrs. Pullen's notes regarding this case were also admitted into evidence. Her notes reflect that the Appellant also spanked the victim's one-year-old sister "but that he only popped her legs." Moreover, according to Mrs. Pullen, Angela Sanderlin admitted that she too was "abused" by the Appellant and had left him "more than once[.]" Upon examination by the court, Mrs. Pullen testified that child abuse was an increasing problem in the county and "we've gone from one to one and half workers to two full-time workers in Haywood County." Along with the testimony of Kim Williams and Renae Pullen, the State also introduced the victim's medical records, which indicated that "[t]here is evidence of old and new injury suggestive of repeated abuse."

The Appellant called four witnesses on his behalf, Bernice Taylor, a counselor at Pathways; Lakisha Barbee, a social worker with the Carl Perkins Center; Stephanie Lovelace, the home case manager for the Department of Children's Services; and Aretha Taylor, the victim's foster parent. According to theses witnesses, the Appellant was remorseful for his conduct, the Appellant and his wife had been involved in parenting counseling, and the Appellant and the victim had a strong bond.

The Appellant also testified at the sentencing hearing. He testified that he was gainfully employed as a brick mason and that he and his wife had been married for eight years. The Appellant stated, "I realize that it was a little excessive and through parenting and counseling I have learned a lot about different methods to take as far as punishment and how to deal with behavioral problems in children." The Appellant explained that, while he was trying to spank the victim, he was "running and jumping around the room[,]" which caused the Appellant "to miss angles and miss his buttocks."

At the conclusion of the hearing, the trial court sentenced the Appellant to a term of four years in the Department of Correction. This timely appeal followed.

## ANALYSIS

As his only assignment of error, the Appellant asserts that his sentence "should have been probated or [he] should have been sentenced alternatively to the community correction program[.]" When the sentencing court properly considers the relevant sentencing considerations, this court conducts a *de novo* review with the presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Because the Appellant was convicted of a class D felony, he is entitled to the presumption that he is a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(6) (2003). We note, however, that "the determination of whether the Appellant is entitled to an alternative sentence and whether the Appellant is entitled to full probation are different inquiries." *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App.), *perm. to appeal denied*, (Tenn. 1996). Where a defendant is entitled to the statutory presumption of alternative sentencing, the State has the burden of overcoming the presumption of evidence to the contrary. *State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App.), *perm. to appeal denied*, (Tenn. 1995), *overruled on other grounds*, *State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). Conversely, the defendant has the burden of establishing his suitability for full probation, even if the defendant is entitled to the statutory presumption of alternative sentencing. *Id.*; *see Boggs*, 932 S.W.2d at 477.

When imposing a sentence of total confinement, the trial court should base its decision on the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2003). Additionally, the potential or lack of potential for rehabilitation of a defendant should be considered in determining whether he or she should be granted an alternative sentence. Tenn. Code Ann. § 40-35-103(5).

In concluding that total confinement was appropriate, the trial court found that:

> I also find that child abuse is an increasing problem in Haywood County. I do not find this to be an excessive punishment case. I find this to be the case of a vicious criminal attack, one that if it had occurred from a stranger would have enraged the community and for some reason there are those who think that crimes against people you're supposed to love should be treated differently than those done against a stranger.

> I don't think that any form of punishment other than confinement can be handed out in this case if we are to avoid depreciating the seriousness of this offense. I don't think that less restrictive measures have worked with this Defendant and I do feel that the appropriate sentence in this case is four years in the State Penitentiary as a Standard Offender.

While we do not discount the trial court's finding of a need for deterrence in the community, this finding, we conclude, is overshadowed by the finding that a non-incarcerative sentence would depreciate the seriousness of the Appellant's conduct by trivializing the severity of the crime committed.

The facts of this case clearly establish that the Appellant's conduct was reprehensible, offensive, and of an excessive degree. *State v. Hartley*, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991). As noted by the trial court,

> I find that even though the charge is child abuse, above and beyond that, this child was treated with exceptional cruelty, both emotionally and physically over what must have been a prolonged period of time because you couldn't inflict that many injuries in a short period of time. The injuries to this child I find were great. Even six days after the fact photographs show bruises, they show welts, they show scars, they show open wounds. Those wounds are all over his back, the back of his legs, the front of his legs, the sides of his legs. I personally on the exhibit the State presented counted over seventy marks. There were injuries on his legs, on the front of his legs, literally going up to the line of his underwear at the point where his underwear covered his genitals. There were injuries on the back of his arms. All of this to a victim who was particularly vulnerable because of his age and also because of the custodial parent/child relationship that existed.

*See also State v. Zeolia*, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996) (permitting use of enhancing and mitigating factors as relevant to section 40-35-103(1) considerations). Moreover, the victim's

medical records indicated signs of prior abuse. The Appellant's explanation at the sentencing hearing that he only intended to strike the victim on his buttocks but missed because "he was doing a lot of running and jumping around the room" was implausible given the extent and severity of the wounds. The Appellant still failed to comprehend the severity of his actions, as he characterized his discipline of his son as "a little excessive."

Furthermore, measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the Appellant. Following a single criminal episode, the Appellant was convicted of five counts of burglary, one count of burglary other than a habitation, two counts of theft of property between $500 and $1,000, and two counts of theft of property under $500. For these offenses he was placed on community corrections and probation. Indeed, the pre-sentence report[1] reflects that:

> Defendant was placed on Community Corrections out of Lauderdale County Circuit Court on June 19, 1999 for a period of two years. He received a conviction in Dyer Circuit Court and was placed on Community Corrections for a period of one year to run concurrent with the Lauderdale Convictions. He completed all requirements of his behavior contract on February 1, 2000 and was transferred to supervised probation. He was discharged from probation on May 24, 2001[.]

Upon *de novo* review, we agree with the trial court's determination that confinement is necessary to avoid depreciating the seriousness of the offense and that measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. The record amply supports the trial court's decision in denying all forms of alternative sentencing, including probation. This issue is without merit.

## CONCLUSION

For the above stated reasons, we affirm the sentencing decision of the Haywood County Circuit Court, ordering the Appellant to serve his four-year sentence in the Department of Correction.

_____
DAVID G. HAYES, JUDGE

---

[1]The pre-sentence report shall be considered for sentencing purposes by the court. Tenn. Code Ann. § 40-35-210(b)(2).